IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS, INDIANA

| | |
|---|---|
| ERIN DURBIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:21-cv-02356 |
| | ) |
| I. U. HEALTH, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, named-above, complains of act and omissions to act by the Defendant. In support of her Complaint and as cause of action against Defendant, Plaintiff respectfully submits the following:

JURISDICTION

1. This suit is authorized and instituted pursuant to the Family Medical Leave Act (FMLA) 29 U.S.C.§ 2601 et seq.; Americans with Disabilities Act of 1990 (ADA) 42 U.S.C.A. § 12101 et seq.; 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff filed a claim with the Equal Employment Opportunity Commission (EEOC) and received a notice of right to sue on or about July 1, 2021.

PARTIES

3. Plaintiff, at all relevant times, resided in the Southern District of Indiana.

4. Plaintiff worked at a worksite of Defendant which employed more than 50 employees within a 75-mile radius of that worksite.

5. Plaintiff worked over 1250 hours during the 12 months preceding her termination.

6. Defendant is a corporation doing business in the State of Indiana in the Southern

District of Indiana.

## FACTS

7. Plaintiff began working for Defendant on April 9, 2012, as a Shift Coordinator.

8. Plaintiff performed her job well.

9. All of Plaintiff's evaluations were good and she received commendations about her work performance.

10. Plaintiff was promoted to Manager of Clinical Operations in 2014.

11. In 2018 DeAnn Gulley was Plaintiff's supervisor.

12. During June 2018 Plaintiff began experiencing abnormal anxiety.

13. Plaintiff discussed her anxiety with her supervisor.

14. Plaintiff's husband took her to the Shelbyville Emergency Room.

15. Plaintiff was transported from the Shelbyville Emergency Room to Community North.

16. Thereafter, Plaintiff was admitted to Community Behavioral Unit on June 30, 2018, and she remained there until July 6, 2018.

17. Plaintiff was off work on Family Medical Leave from July 2, 2018, to August 23, 2018.

18. Plaintiff was diagnosed with Acute Psychosis.

19. In March 2019 Plaintiff began having paranoid thoughts.

20. Plaintiff became distressed and violent and was taken to Hancock Emergency Room.

21. Plaintiff was off work on Family Medical Leave from March 18, 2019, until June 10, 2019.

22. Upon Plaintiff's return to work her supervisor was less supportive of Plaintiff personally and professionally.

23. She began spending less time at Defendant's surgery center where Plaintiff worked.

24. They were supposed to have monthly meetings but they were regularly cancelled.

25. Prior to Plaintiff's second Family Medical Leave ("FML") these meetings were never cancelled.

26. She stopped liking and commenting about Plaintiff's pictures on Facebook.

27. However, she continued to like and comment on the other two manager's Facebook posts.

28. Plaintiff's supervisor stopped calling to check in with Plaintiff as she did prior to Plaintiff's second FML.

29. If Plaintiff needed anything, she had to call the supervisor.

30. Plaintiff's supervisor suggested to Plaintiff that she transfer to a smaller surgery center and switch positions with the manager at the smaller center.

31. She stated that it would help the PACU if the manager from the smaller surgery center would take Plaintiff's position.

32. Plaintiff told her supervisor she preferred to stay in her position at the larger surgery center.

33. There were many changes and new projects during this time.

34. However, Plaintiff's supervisor stopped giving her any updates.

35. Plaintiff would often find out about changes when her staff was informed.

36. Prior to Plaintiff's second FML, her supervisor would always tell Plaintiff about changes and seek her input on projects.

37. Around the middle of March 2020 Plaintiff was sent an email from her supervisor that had been forwarded to her from another director.

38. The email was recognizing Plaintiff as a high performing leader and asking if Plaintiff would be interested in joining the Resource Command Center (RCC) for COVID Response.

39. The surgery centers were closed effective March 20th.

40. Plaintiff met with the RCC on March 24th.

41. During the meeting Plaintiff began experiencing severe mental distress.

42. Thereafter Plaintiff abruptly left the meeting.

43. After that Plaintiff's memory is very blurry.

44. Plaintiff's husband has informed her he started noticing Plaintiff not sleeping and increased anxiety beginning March 20th.

45. On the evening of March 26th Plaintiff physically collapsed.

46. The next day Plaintiff was admitted to St. Vincent Stress Center.

47. She was there from March 27, 2020, to March 30, 2020.

48. Plaintiff was again diagnosed with acute psychosis.

49. On March 30, 2020, Plaintiff's husband notified her supervisor that he took Plaintiff to the hospital.

50. The supervisor asked him if it was like before or COVID related and she then told him he did not have to answer.

51. Upon Plaintiff's release from the hospital she was on strong medication and was not thinking clearly.

52. Plaintiff felt she should not return to work but returned out of fear of losing her job.

53. Plaintiff believed she was on the RCC team and a higher ranking executive tasked with forwarding important information pertaining to how COVID could affect any of Defendant's working systems and to work on a chain of communication for the incident response team to follow.

54. Of course, none of that was true but Plaintiff's condition caused her to believe it was true.

55. Plaintiff sent out several emails and COVID related articles with instructions for the recipients to follow.

56. Plaintiff does not recall receiving any return emails.

57. Plaintiff was very tired and confused.

58. Plaintiff knew she needed to take time off.

59. Plaintiff contacted her supervisor and asked to take PTO time on April 1st.

60. The supervisor responded by asking Plaintiff who she should ask on RCC about PTO.

61. Plaintiff responded Amy Robinson.

62. In the meantime, still confused and under the illusion she was working with the executives on the RCC, Plaintiff continued to send emails delegating COVID related tasks.

63. At the same time, Plaintiff's husband and sister were working on getting her to a psychiatrist.

64. Also, on April 1st Plaintiff's supervisor called her and stated she was concerned and asked Plaintiff did she know why.

65. Plaintiff said because she was doing the RCC's job.

66. Plaintiff's supervisor then stated she would be scheduling a conference call with human resource.

67. The supervisor knew Plaintiff was not working with the RCC, she had talked to them on March 31st.

68. Plaintiff's supervisor knew she was confused and acting irrationally.

69. She was clearly aware of Plaintiff's prior medical condition.

70. She knew Plaintiff was in need of help but never offered her any assistance.

71. Plaintiff's conduct was due to her medical condition and Defendant knew that.

72. Despite this knowledge, Defendant suspended Plaintiff pending termination.

73. Thereafter on April 7, 2020, Defendant terminated Plaintiff for alleged gross misconduct and placed her on a no re-hire list for the surgery centers.

74. Defendant discriminated against Plaintiff due to my disability when it suspended, terminated and placed her on a no re-hire list.

75. All in violation of the Americans with Disabilities Act as amended and the Family Medical Leave Act.

## COUNT I

76. Plaintiff incorporates by reference paragraphs 1 through 75.

77. Defendant as a result of terminating Plaintiff due to her medical condition violated the FMLA 29 U.S.C.§ 2601 et seq.

## COUNT II

78. Plaintiff incorporates by reference paragraphs 1-75.

79. Defendant as a result of retaliating against Plaintiff for taking medical leave violated the FMLA 29 U.S.C. § 2601 et seq.

## COUNT III

80. Plaintiff incorporates by reference paragraphs 1-75.

81. Defendant as a result of discriminating against Plaintiff due to her disability violated the ADA 42 U.S.C. § 12101 et seq.

## COUNT IV

82. Plaintiff incorporates by reference paragraphs 1-75.

83. Defendant as a result of failing to accommodate Plaintiff regarding her disability violated the ADA 42 U.S.C. § 12101 et seq.

## **CLAIM FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays the Court grant the following relief:

A. Reinstate Plaintiff to her position.

B. Award Plaintiff back pay and benefits lost.

C. Award Plaintiff compensatory damages for future pecuniary loss, emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life;

D. Award Plaintiff punitive damages.

E. Award Plaintiff liquidated damages.

F. Award Plaintiff her costs in this action and reasonable attorney's fees.

G. Grant Plaintiff any and all other relief which is allowable under the circumstances of this case.

Respectfully submitted,

**STOWERS & WEDDLE P.C.**

_s/Gregory A. Stowers_
Gregory A. Stowers, #13784-49
Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

Comes now the Plaintiff, by counsel, and requests that this cause be tried by jury.

Respectfully submitted,

  s/Gregory A. Stowers
Gregory A. Stowers, #13784-49

**STOWERS & WEDDLE P.C.**
626 N. Illinois Street
Suite 201
Indianapolis, IN 46204
(317)636-6320